# THE STATE v. FRANK J. MINER, Appellant.

## Division Two, March 7, 1911.

1. **BUCKET SHOP: Agent of Corporation: Convicted as Principal.** Where the indictment charged that the defendant, "as principal, unlawfully and feloniously did set up and carry on a bucket shop," namely, a room wherein the defendant, "carrying on said bucket shop as principal, pretended to buy and sell" stock, cotton, grain, etc.; and the evidence for the State shows that the principal in all the transactions was a corporation— that the place was operated under the name of the company; that the bank account was kept in its name; that the business with the customers was transacted by various agents of the company; that all the activities, telegraphing, receiving and recording quotations, were carried on by the agents and servants of the corporation—and there is no proof of any trades having been made by defendant in person, nor any by his directions, the demurrer to the State's case should have been sustained. Defendant was not the principal, though he was president of the corporation under whose direction and in whose name the wrongful acts were done by others of its agents.

2. ——: **Corporation a Sham.** The State cannot show a valid corporation, carrying on the place and making the sales, and at the same time show the corporation was a mere mask behind which defendant as its president operated as the real principal.

3. ——: **Indictment: Names of Customers.** To sufficiently charge the offense of carrying on a bucket shop, the State must prove pretended sales or purchases, and the vital question is, whether the sale was real or pretended. Therefore, the indictment should charge either the names of the customers with whom pretended trades were made, or that their names are to the grand jurors unknown.

4. ——: **Valid Statute: Inhibition of Innocent Transactions.** The statute prohibits a place in which a person carrying it on makes pretended sales or purchases, without regard to whether such sales or purchases are innocent or of a gambling nature, and is not invalid because it forbids innocent transactions in the place or because it does not define the pretended sale or purchase. The Legislature, in order to inhibit the carrying on of a place in which gambling or pretended sales are made, may prohibit the making of innocent sales or purchases in such a place.

5. ————: ————: Title.  The caption of the act is "Crimes and
Punishments, Bucket Shops."  The title proper is: "An Act to
repeal sections 2221, 2223, 2224, 2225 and 2226 of Chapter 15,
Article 8, of the Revised Statutes of 1899, and to enact new
sections in lieu thereof."  Chapter 15, R. S. 1899, is headed
"Crimes and Punishments;" and article 8 is headed "Offenses
Against Public Morals and Decency, or the Public Police and
Miscellaneous Offenses."  Sections 2221 et seq., repealed, relate
to bucket shops.  *Held*, that the title indicated that the act re-
lated to bucket shops and was sufficient.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. C. Hitchcock*, Judge.

REVERSED AND REMANDED.

*Chester H. Krum, Henry S. Priest, A. M. Frum-berg* and *Thos. B. Harvey* for appellant.

(1)  The Act of March 18, 1907, is inoperative
and void for uncertainty.  No standard or test is
afforded by which to determine when the denounced
transaction, innocent in itself, becomes criminal.
Bish., Stat. Cr. (3 Ed.), sec. 41; 26 Am. & Eng. Ency.
Law, 656; Black on Interpretation of Laws, 336; State
v. Partlow, 91 N. C. 550; Cook v. State, 26 Ind. App.
278; Augustine v. State, 41 Tex. Crim. Rep. 59; State
v. Mann, 2 Ore. 241; State ex inf. v. Railroad, 146
Mo. 155; State ex rel. v. Ashbrook, 154 Mo. 393; End-
lich, Int. of Statutes, p. 11; Railroad v. Dey, 34 Fed.
876; United States v. Sharp, 27 Fed. Cas. 1043; United
States v. Brewer, 139 U. S. 288; Jackson, ex parte,
45 Ark. 164.  (2)  The act is obnoxious to the pro-
visions of the State and Federal Constitutions.  It
deprives of liberty and property "without due process
of law."  The law forbids buying and selling with-
out imposing any conditions or limitations which
would render the transactions harmful or criminal.
And if it attempted to qualify the right to buy and
sell, the qualification must be such as would evidently

result in the public wrong denounced. People v. Gillson, 189 N. Y. 389; Long v. State, 74 Md. 565; State v. Hartley, 185 Mo. 671; 8 Cyc. 864 (B.); Bishop, Stat. Cr. (3 Ed.), sec. 858; U. S. Constitution, 14 Amendment, sec. 1; Mo. Constitution, art. 2, sec. 30. (3) The offense which the evidence tended to establish was a misdemeanor only. R. S. 1909, secs. 4780-4782; Yall v. Gillham, 187 Mo. 393; Evans v. McFarland, 186 Mo. 373; State ex rel. v. Wilder, 197 Mo. 27; State v. Kessels, 120 Mo. App. 243; Sikes v. Railroad, 127 Mo. App. 335; Sutherland, Stat. Cons., secs. 283-284, 288 and 327; State v. Green, 87 Mo. 583: State ex rel. v. Foster, 187 Mo. 609; Potter's Dwarris, 272-273; Bishop, Stat. Cr. 126. (4) The indictment fails to allege that the criminal act was done feloniously. State v. Feaster, 25 Mo. 324; State v. Gilbert, 24 Mo. 380; State v. Emerlich, 87 Mo. 115; State v. Herrall, 97 Mo. 108; State v. Williams, 184 Mo. 264; State v. Woodward, 191 Mo. 626; State v. Willard, 219 Mo. 721. (5) The indictment does not sufficiently state any offense. State v. Hayward, 83 Mo. 304; State v. Davis, 70 Mo. 468; Bishop, Cr. Proc., sec. 566; State v. Cox, 29 Mo. 476; State v. Krueger, 134 Mo. 272; State v. Burke, 157 Mo. 136; State v. Pickett, 174 Mo. 668; State v. Cameron, 216 Mo. 420; State v. Stowe, 132 Mo. 205; State v. Barbee, 136 Mo. 440; State v. Franken, 148 Mo. 143; U. S. Constitution, 6 Amendment; Mo. Constitution, art. 2, sec. 22. (6) The statute upon which the indictment is based is unconstitutional and void. 1. Unconstitutional. a. The subject of the act is not clearly expressed in the title. b. The subject-matter of definition in section two is beyond the police prerogatives of the Legislature. A mere pretense to make a sale, etc., cannot lawfully be declared to be gambling. State v. Hartley, 185 Mo. 669; Long v. State, 74 Md. 565; People v. Gilson, 109 N. Y. 389; Railroad v. Jacksonville, 67 Ill. 37; Yellowstone Kit v. State, 88 Ala. 196; 8 Cyc. 864B. 2. Void—

for uncertainty.  a. "Otherwise"—meaningless term.
b. Part following *wherein,* applicable to trades made
elsewhere than in place complained of, thereby ren-
dering senseless the section defining the crime.  c. No
tangible meaning to be attributed to "pretended to
buy or sell," or "went through the form of buying
or selling."  Judges and juries would naturally differ
in the application of the law.  State v. Light Co., 212
Mo. 109; State ex rel. v. Ashbrook, 154 Mo. 375; State
ex rel. v. Railroad, 146 Mo. 155; Cook v. State, 26
Ind. App. 278; State v. Partlow, 91 N. C. 550; 26 Am.
& Eng. Ency. Law, 656.  d. Rule of grammatical con-
struction applied to statute renders it absolutely
senseless.  Wherein applies to part of section imme-
diately preceding that word.  State ex rel. v. Rail-
roads, 215 Mo. 479.  e. The statute violates both the
Constitution of Missouri and that of the United States.
(7)  The indictment is wholly insufficient and violates
the "well-settled principle of law," that before one
can lawfully be convicted of a criminal offense there
must have been preferred against him a "clear legal
charge."  1. It is a mere copy of the section which
defines the crime.  2. The place kept is not alleged.
State v. McLaughlin, 160 Mo. 40; Wheat v. State, 6
Mo. 455; State v. Welsh, 28 Mo. 600; State v. Hogan,
31 Mo. 340; State v. Wacker, 16 Mo. App. 420.  3. The
indictment is a mere copy of a statute which does not
individuate the offense.  State v. Burke, 151 Mo. 142;
United States v. Cruikshank, 92 U. S. 542; State v.
Meysenburg, 171 Mo. 25; State v. Krueger, 134 Mo.
262; State v. Watson, 206 Mo. 420; State v. Stowe,
132 Mo. 199; State v. Fraker, 148 Mo. 143; State v.
Barbee, 136 Mo. 440; State v. Pickett, 174 Mo. 668;
State v. Cameron, 216 Mo. 420.  4. The indictment is
merely a series of recitals and destitute of all aver-
ment of fact.  "Pretended to buy and sell"—without
an averment of fact.  "Went through the form of
buying and selling"—without an averment of fact.

These recitals do not even allege that "pretended to buy," etc., was feloniously done. State v. Truley, 142 Mo. 409; State v. Fairlamb, 121 Mo. 154; State v. Clayton, 100 Mo. 519; State v. Weldon, 70 Mo. 574; State v. Feazell, 132 Mo. 181; State v. Green, 111 Mo. 587; State v. Williams, 184 Mo. 264. 5. No person named with whom trade was made; no commodity traded in specified. State v. Burke, 151 Mo. 144; State v. Martin, 108 Mo. 117. 6. No "board of exchange" specified on which prices were fixed. 7. Term *otherwise*, used in statute, merely recited *in haec verba* in indictment. The indictment does not contain one averment of fact. It is a mere recital, in the language of the definition set out in the statute, of conclusions made in the absence of facts necessary to be pleaded. It violates every elementary rule of criminal pleading prescribed for the protection and information of the accused, either by the courts or by the Constitution. It falls as far short as one can well conceive of compliance with the rule that it is a "well-settled principle of law" that a "clear, legal charge" must be preferred against one charged with crime. State v. Lawrence, 178 Mo. 350. (8) The instruction in the nature of a demurrer to the evidence should have been given. 1. Appellant indicted as principal—"as principal unlawfully and feloniously did set up and carry on a bucket shop." Not one word of evidence to such effect. The State proved place set up and carried on by "Merchants' Stock and Grain Company," an existing corporation. 2. Appellant indicted as principal—only evidence at best was that he was an agent for a corporate principal whose existence the State conclusively proved. 3. Statute requires that fictitious trades should have been at prices fixed by trades on "boards of exchange or otherwise." No evidence on this subject. Not one word tending to prove anything. No evidence that what witnesses spoke of as quotations emanated from a board of ex-

change or "otherwise." Case of the State a mere blank on the subject. 4. Statute requires that trades on boards of exchange by which prices are to be fixed in the bucket shop must themselves have been fictitious. No evidence on this score—not one word. (9) The main instruction given by the court was wholly erroneous. 1. It was merely a copy of a wholly insufficient indictment. State v. Roberts, 199 Mo. 529. 2. The meaning of the term *otherwise* is not explained. State v. Hardelein, 169 Mo. 586. 3. The statute using the words "any person," the same words used in the indictment mean every person, and the instruction should have so indicated and required proof accordingly. It did not so require. 4. The meaning of terms "pretended to buy and sell" and "went through the form of buying and selling" not explained. Imperative that this should have been done. 5. There was no evidence on which to base the instruction. The instruction was and is utterly bad and indefensible. There was no evidence to support it. The instruction merely copied a bad indictment. It did not explain the meaning of terms employed by the statute which most sorely needed explanation. It was not as broad as the statute and did not fully instruct as to the law of the case. It is a marvelous departure from every approved and judicially settled notion of instructing a jury in a criminal case. (10) The instruction as to the meaning of the term *sale* used in the statute and by the court was erroneous and inconsistent with an instruction given for appellant. 1. The instruction defined a sale to be a transfer of the "absolute and general property" in a thing from one person to another at the time of such sale. This is a merely abstract proposition, but, at best, not applicable. Necessarily, if this were the law a sale for future delivery would be fictitious, and, being fictitious, would be unlawful. 2. The court, however, instructed for the appellant that a sale for future delivery would

not of itself be unlawful. 3. To speak of an "absolute and general property" in a thing which may not even be in existence is a legal absurdity. (11) The instruction with reference to accomplices was erroneous. 1. It was a mere general proposition. 2. No one claimed that an accomplice had testified. 3. The appellant was prejudiced because the instruction assumed a crime had been committed. Otherwise there could not have been an accomplice. (12) Instructions one, two and three asked by the appellant should have been given. 1. Number one was based on the distinction made by the statute and indictment between a principal and an agent. 2. Number two was based upon the undisputed fact established by the State, that when the corporation was formed, the appellant was in Chicago. 3. Number three told the jury that the fact of the corporate existence of the "Merchants' Stock and Grain Company" was not open to collateral attack. To say the least of it, the refusal of this last instruction was well calculated to shock the legal sense. The State proved that the corporation existed. The law says that the fact cannot be questioned by collateral attack. Nevertheless, a trial court let the jury find, if they would, that the corporation had no existence, but was a myth. (13) The trial court committed palpable errors in the admission of evidence objected to by appellant. 1. It was error to admit evidence of the doings of persons employed at Fourth and Pine and statements made by them or to them by others in the absence of the appellant. The rule is inflexible that authority *aliunde* the admission and that the admission was within the scope of the authority must be shown, before the principal can be bound by the declaration of his agent. Helm v. Railroad, 98 Mo. App. 425; Cosgrove v. Railroad, 54 Mo. 498. No authority was shown. No knowledge on the part of appellant was shown. No connection whatever was shown between him and any given transaction. 2. It was error to

admit evidence that when trades were made samples were not exhibited. This evidence is too absurd to be worthy of comment.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle* and *James T. Blair,* Assistant Attorneys-General, for the State.

(1) At the threshold of this case we observe in appellant's brief an allusion to the alleged invalidity and unconstitutionality of the act upon which the indictment is predicated, but we shall refrain from entering upon a discussion of that feature, since no such question is presented by the record nor involved in this appeal. The indictment clearly discloses upon its face that it is based solely upon an act of the Legislature of 1907 (Laws 1907, p. 236—sections 4772, 4773, R. S. 1909), relating to bucket shops, and if appellant desired to assail the validity of this act, and have it passed upon by this court, it was indispensable that the constitutional question be lodged at the earliest moment that good pleading and orderly procedure would permit, and that the trial court be given an opportunity of first deciding the question. Although the indictment is in the words of the statute, and appellant's distinguished counsel well knew the particular statute upon which it is based, yet no demurrer, or motion to quash, raising a constitutional question, was filed. At no subsequent stage of the trial did appellant present such a point, either by objection to the evidence or instructions. When we read the motion for a new trial, we read it from beginning to end, and find not a word suggesting, in any particular, the unconstitutionality of this law. State v. Raymond, 156 Mo. 118; State v. Grant, 194 Mo. 366; State v. Gregory, 170 Mo. 602; Jacob v. St. Joseph, 204 Mo. 357; State ex rel. v. Bland, 186 Mo. 701; State v. Kyle, 177 Mo. 663; State v. Gamma, 215 Mo. 103;

State ex rel. v. Smith, 176 Mo. 44; Ash v. Independ-ence, 169 Mo. 77; State v. Boehler, 220 Mo. 5; Barber Asphalt Co. v. Ridge, 169 Mo. 387; Lohmeyer v. Cord-age Co., 214 Mo. 689; Bartlett v. Veach, 128 Mo. 92; Hartzler v. Railroad, 218 Mo. 565; City v. Clark, 186 Mo. 292; State v. Richardson, 194 Mo. 336; State v. Diltz, 191 Mo. 673; State, v. Alfred, 115 Mo. 473. A complaint of this nature and upon such a record as this cannot be lodged for the first time in a motion in arrest of judgment. State v. Gamma, 215 Mo. 103; State v. Boehler, 220 Mo. 5; State v. Grant, 194 Mo. 366; Hartzler v. Railroad, 218 Mo. 565. The motion in arrest does not properly raise the question, since it wholly fails to designate the section or article of the Constitution, or the particular in which the act violates the Constitution. State v. Kuehner, 207 Mo. 606; St. Joseph v. Ins. Co., 183 Mo. 7; State v. Chris-topher, 212 Mo. 247; Lohmeyer v. Cordage Co., 214 Mo. 688. (2) The offense charged is statutory and is fully defined and individuated by the act creating it. Section 1 of the act (R. S. 1909, sec. 4772) makes it a felony to "set up and carry on a bucket shop," while section 2 of the act (R. S. 1909, sec. 4773) points out in detail what constitutes the "set-ting up and carrying on of a bucket shop." These sec-tions are, strikingly similar to Sec. 4782, R. S. 1909, which creates a similar offense, and the two sec-tions mentioned more fully individuate the offense than does the last mentioned section. An indictment in the language of that section is sufficient. State v. Kenter, 178 Mo. 473; State v. Runzi, 105 Mo. App. 332. An indictment is good which follows the lan-guage of section 4754. State v. Bregard, 76 Mo. 322; State v. Bean, 21 Mo. 267. Under this section it has also been held that in charging the setting up and keeping of a bawdy house it is not necessary to name the occupants or the definite location of the house. State v. Raymond, 86 Mo. App. 537. An indictment

is sufficient which follows the language of Sec. 4750, R. S. 1909, which section is directed against the "setting up and keeping of any table or gambling device adapted, devised and designed for the purpose of playing games of chance for money or property." State v. Rosenblatt, 185 Mo. 120; State v. McKee, 212 Mo. 138. The sufficiency of this indictment is fully sustained in the following cases, upon similar statutes. State v. Corcoran, 73 Vt. 404; Weare Com. Co. v. People, 209 Ill. 528; Case Notes, 20 L. R. A. (N. S.) 347, 348. It is not necessary that the indictment specify more definitely than it does the commodity dealt in, or the name of the board of trade on which prices were fixed, or pretended to be fixed, or the names of the persons with whom the trades were made, these matters being wholly immaterial. Com. v. Edds, 14 Gray (Mass.) 406; State v. Prescott, 33 N. H. 212; McGaffey v. State, 4 Tex. 156; Horan v. State, 24 Tex. 161; State v. Crummay, 17 Minn. 72; Clark v. State, 19 Ala. 552; Chase v. People, 2 Colo. 509; Kleespies v. State, 106 Ind. 383; State v. Winfield, 115 Mo. 428. It is unnecessary for the indictment to designate the particular house or place in which the bucket shop was kept, it being sufficient to merely allege that it was kept in the city of St. Louis. State v. Prescott, 33 N. H. 212; Eylar v. State, 37 Tex. Crim. 56; Dohne v. State, 68 Ga. 339; Kleespies v. State, 106 Ind. 353; Bibb v. State, 83 Ala. 84. Appellant complains at the use of the term *otherwise* in the indictment. This phase of the indictment has been directly passed on and ruled adversely to appellant in State v. Corcoran, 73 Vt. 407. It is used in this indictment conjunctively, and does not render the indictment defective. State v. Calvert, 209 Mo. 280; State v. Grossman, 214 Mo. 233; State v. Fielder, 210 Mo. 188; State v. Cameron, 117 Mo. 371. Particularly does it not make the indictment bad after verdict when appellant filed no mo-

tion to quash. State v. Blakeley, 184 Mo. 187; State. v. Neihaus, 217 Mo. 332. The offense against which the statute is leveled is the setting up and carrying on of a bucket shop, and the indictment sufficiently charges that the act was done "feloniously." State v. Hendrickson, 165 Mo. 262. (3) 1. There is substantial evidence in this record that the business conducted under the name of the Merchants' Stock and Grain Company was a bucket shop business. That business has been defined by the Court of Appeals of Kentucky, 84 Ky. 664. See Connor v. Black, 119 Mo. 141; Bryant v. Tel. Co., 17 Fed. 827; Weare Co. v. People, 209 Ill. 539. 2. There is substantial evidence that appellant set up and carried on the bucket shop in the name of the "Merchants' Stock and Grain Company." Some effort is made to contend that, since the business was carried on in the name of a corporation, appellant was therefore wrongfully convicted. It is to be observed that the Merchants' Stock and Grain Company was not and could not have been incorporated to carry on a bucket shop. Conceding that appellant acted solely as an officer of the Merchants' Stock and Grain Company, he could not defend here on that ground. Crall & Ostrander's Case, 103 Va. 859; 2 Bishop's New Crim. Law, sec. 424; Hays v. State, 13 Mo. 246; Schmidt v. State, 14 Mo. 137; The Law of Crimes (2 Ed.), secs. 195, 112, 83; Reese v. State, 73 Ala. 19; People v. White Lead Works, 82 Mich. 479; State v. Milling & Mfg. Co., 20 Me. 41. The above cases demonstrate that appellant's participation in the violation of the bucket shop law subjected him to its penalties, despite the fact that he was president of the Merchants' Stock and Grain Company. In fact, his presidency of that company, which appears to have been organized in a rather peculiar fashion, tends more to inculpate than exculpate him. It certainly cannot serve to exempt him from the law, which he violated, any more than could his connection with some other

corporation whose corporate name was not over the door of the rooms at Fourth and Pine. 3. It is not necessary to argue the *bona fides* of the organization of the Merchants' Stock and Grain Company. Since appellant's connection with that company could not protect him in any event, the question of good faith is not in the case. 4. Including the words ''as principal'' in the indictment changed in no manner the measure or character of the proof necessary to show guilt under the statute. The omission of the words mentioned leaves a complete and formal charge against appellant, and that is all that the law exacts. State v. Currier, 225 Mo. 650. 5. Section 4772 does not introduce a distinction between a principal and an agent in the violation of the section. The language clearly shows that it is leveled against all who violate its provisions without regard to their relations to third persons. Whether principal or agent, whosoever sets up and carries on a bucket shop is guilty of a felony under the section named. The following section in defining bucket shops shows that the use of the words ''as principal or as agent,'' etc., sprang from an excess of caution and not from an intent that a principal should be indicted or tried in anywise differently than an agent. The same conclusion is fully supported by the language of section 4776. Any other construction would not only do violence to the language of the act itself, but would run counter to other portions of the law of the State. It would be equivalent to holding that the Bucket-Shop Act operated as a partial repeal by implication of Sec. 4898, R. S. 1909. Such repeals are never favored, and a construction of the kind is avoided whenever that can be reasonably done—''is not to be adopted unless it is inevitable.'' Endlich on Int. Stats., sec. 210; 1 Lewis' Sutherland, Stat. Const., p. 467; Manker v. Faulhaber, 94 Mo. 439; Evans v. McFarland, 186 Mo. 723; State ex rel. v. Wilder, 197 Mo. 35; McVey v. McVey, 51 Mo. 420; State ex rel. v. Wells,

210 Mo. 620. 6. It is said that there was no evidence that purchases and sales were made at prices fixed or pretended to be fixed by trades and transactions made or offered to be made "on board of exchange," etc. The record contains much evidence of appellant's guilt, and is entirely sufficient to support the verdict. State v. Rollins, 186 Mo. 505; State v. Miller, 188 Mo. 379; State v. Smith, 190 Mo. 723; State v. Faulkner, 185 Mo. 703; State v. Page, 212 Mo. 243. (4) Paragraph one of the instructions given required the jury, before returning a verdict of guilty, to find affirmatively every element of the offense defined by the statute. R. S. 1909, secs. 4773, 4774 and 4776. The fact that a greater burden than the law warrants was placed upon the State by this instruction furnishes appellant no ground of complaint. Secs. 4776 and 4898, R. S. 1909. The contention that appellant cannot be convicted because he was not shown to have been the originator of the place at Fourth and Pine, and, therefore, was not shown to have "set it up," cannot be upheld. If the term *set up* had such meaning as attributed to it in briefs for appellant, no person who did not himself install the tables, blackboards, telegraphic equipment, etc., and erect the building which housed the establishment, could ever be convicted under our statute. One who purchased such an establishment and continued to carry it on would go scot free. This is not the meaning of the statute. Frisbie v. State, 1 Ore. 266; Com. v. Carson, 6 Phil. 383; Com. v. Burns, 27 Ky. 180.

FERRISS, J.—Defendant was convicted at the February term, 1910, of the circuit court of the city of St. Louis, upon the charge of setting up and carrying on a bucket shop, and sentenced to five years in the penitentiary. The indictment was as follows:

"The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in

court, duly impaneled, sworn and charged, upon their oath present, that Frank J. Miner, on the twenty-second day of March, one thousand nine hundred and ten, at the city of St. Louis aforesaid, as principal, unlawfully and feloniously did set up and carry on a bucket shop, namely, a room and place wherein and in which said bucket shop, namely, said room and place, the said Frank J. Miner, carrying on said bucket shop as principal, pretended to buy and sell, and went through the form of buying and selling to and from and for any person and persons, stocks and bonds of certain corporations, petroleum, cotton, grain, provisions and other commodities, and one or more of the same, at prices fixed and pretended to be fixed by trades and transactions made and offered to be made in the same on boards of exchange and otherwise, but wherein there was in fact no actual purchase and sale and sale and purchase of such commodities for and on account of the party and parties thereto; contrary to the form of the statute," etc.

This indictment is based upon an act of the Legislature passed in 1907. [Laws 1907, p. 236; now section 4772 and following, R. S. 1909.] Sections 4772 and 4773 are as follows:

"Sec. 4772. Whoever, as principal, or as agent of any corporation or person or persons, shall set up and carry on a 'bucket shop,' or any person who shall accept employment from any person or persons, or corporations engaged in carrying on a bucket shop, and shall under such employment in any manner or capacity assist in the carrying on of a bucket shop, shall be guilty of a felony.

"Sec. 4773. A bucket shop, in the meaning of the preceding section, is a place wherein the person carrying on the bucket shop, then and there, either as principal or agent, pretends to buy or sell, or goes through the form of buying and selling, to or for any other person or persons, stocks, bonds, petroleum,

cotton, grain, provisions and other commodities, or any one or more of the same, at prices fixed or pretended to be fixed by trades or transactions made or offered to be made in same on boards of exchange or otherwise, but wherein there is in fact no actual purchase and sale, or sale and purchase of such commodity for or on account of the party or parties thereto.''

The evidence introduced by the State tended to prove that the Merchants' Stock and Grain Company, a corporation duly organized under the laws of Missouri, was conducting the alleged bucket shop on the northeast corner of Fourth and Pine streets, in the city of St. Louis. The place was fitted up with a black-board on which quotations were posted; also telegraph instruments, counters, desks, etc. Markers, telegraphers, bookkeepers and a cashier plied their respective vocations without any apparent managing head. This place was resorted to by people who bought or sold stocks and grain on margins. Several witnesses testified that they had so bought and sold as customers—three of the witnesses, that they had actually received or delivered stock on these trades. Most of them testified that they were told, or it was understood, that they could get the stock or grain if they desired it. As a matter of fact, the practice was to make no delivery, but to settle the transactions on the rise or fall of the market. Some of the witnesses testified that they bought through the house, not from the house, and they all testified that, upon the execution of the order, they received what they called a confirmation—an account in the shape of a written memorandum, showing the name of the article bought or sold, quantity and price. All of these memorandums were signed in the name of the Merchants' Stock and Grain Company. Several witnesses testified that they were employees of the aforesaid corporation. One of them, who was vice-president of the corporation, kept the books and was assistant at the cashier's

window. He detailed the method pursued, and testified that the orders were telegraphed to Pittsburg for execution. None of the other witnesses undertook to say how the orders were executed. As far as they were concerned, they merely gave orders to buy or sell, without knowing with whom they dealt. The evidence would justify the inference that the bulk of the transactions, to say the least, were made without any intention of receiving or delivering, but solely with a view to settlement upon the rise or fall of the market. There was also introduced evidence to show that an establishment similarly equipped was operated by the same corporation at Twelfth and Pine streets, in St. Louis, connected with the place at Fourth and Pine streets by wire; that in the place at Twelfth and Pine streets orders were received by wire from outside the State, and filled at Twelfth and Pine.

The testimony tended to show that the Merchants' Stock and Grain Company was organized in February or March, 1908, in a lawyer's office in St. Louis: that the articles of association were subscribed by three persons who were not the substantial owners of the stock. They were employees about the building in which the lawyer's office was located. It does not appear that the defendant participated in the organization of the corporation. Subsequently, at some time not stated, but after the business was in operation, he became president of the company, and signed checks for the company as such president. So far as his connection with the business is concerned, one witness testified that the defendant paid him on one deal. Another testified that he saw the defendant pass through the place two or three times, and saw him once beind the counter. Another witness—a porter in the establishment—testified that the defendant gave him instructions as to cleaning, etc. Another witness testified that the defendant gave some orders to a clerk, and also made inquiries about putting in tele-

graph wires. A policeman found him at Twelfth and Pine streets, which place was run behind locked doors. He ordered the policeman out, at the same time stating that he, himself, had no position there. There is no testimony tending to show the scope or nature of his duties or authority as president of the company, nor is there any testimony connecting him directly with any sale or purchase testified to.

At the close of the State's case the defendant offered a peremptory instruction to acquit, which was refused.

I. The peremptory instruction offered by the defendant at the close of the State's case should have been given. The indictment charges that the defendant, "as principal, unlawfully and feloniously did set up and carry on a bucket shop," namely, a room wherein the defendant, "carrying on said bucket shop as principal, pretended to buy and sell."

Here is a direct charge that the defendant, as principal, pretended to buy and sell. The evidence for the State shows that the principal in all the transactions testified to by the witnesses was the Merchants' Stock and Grain Company, a corporation. The State proved that the place was operated under the name of the company; that the accounts of sales or confirmations in writing, delivered to the customers, were in the name of the company; that the bank account was kept in the name of the corporation; that the business with the customers was transacted by various agents of the company, and that all the activities, telegraphing and receiving and recording quotations, were carried on by the agents and servants of the corporation. The State introduced the articles of association and the certificate of incorporation. There is no proof of any trades made by the defendant in person, nor any by his direction. He was president of the corporation. We do not mean to say that a defendant may

not be charged as principal, and held as such, where the proof shows that the felonious act was committed by his direction. But the mere fact that one is president of a corporation, under whose direction and in whose name wrongful acts are done by others of its agents, cannot make him criminally responsible as principal for the acts so done without his knowledge or direction. If we concede that there is sufficient proof to show that the defendant was cognizant of the transactions testified to, and that he could be held for them if he were carrying on the place as principal, the fact still remains that he was not the principal; that he was, and could only be, an agent of the principal, to-wit, the Merchants' Stock and Grain Company, a corporation. But even as such agent, it does not appear that he personally either carried on the place or made any sales or purchases. There was evidence that would tend to sustain a charge that defendant was assisting in carrying on the place. It is sought by the State to connect the defendant with the sales and purchases shown in evidence, through his connection with the corporation as its president, and yet the State at the same time seeks to throw aside the corporation. The State proved a valid corporation, and then undertook to show that this corporation was merely a mask behind which the defendant operated as the real principal. The State practically conceded that the ostensible principal, carrying on the place and making the sales, was the corporation, and then, after establishing this fact, as also the further fact that the corporation had been duly incorporated, sought to ignore the corporation as a mere sham. It established the corporation apparently for the sole purpose of demolishing it. But this it could not do. The prosecutor appears to have had a confused idea that the principles sometimes applied in equity proceedings to uncover fraud might be invoked here. If the defendant had been indicted as agent for the corporation, the state would certainly

claim that he could not deny his agency on the ground that the corporation was invalid. The validity of a corporation cannot be assailed in a collateral proceeding. Furthermore, it does not appear that the corporation was invalid. The three original incorporators, it appears, were not the substantial owners. This fact is not enough to invalidate the corporation. They were merely the employees about the building wherein was located the office of the lawyer who prepared the articles of association. It does not appear that the defendant had any knowledge of the matter, nor any connection with the incorporators or the attorney who prepared the papers. At some time subsequently he became president of the company. How it does not appear, nor does it appear what powers or duties he had as such, outside of the power to sign checks. He may have been the controlling spirit of the enterprise, but the evidence does not show it. But if the evidence did show the defendant to be the dictator of the doings and policy of the corporation, the fact would still remain that the "person" who carried on the business as principal was the corporation. A corporation cannot be ignored simply because it is acting outside the scope of its charter. That is a matter for the State to deal with in a direct proceeding.

The act in question seeks to hold whoever carries on a bucket shop. It makes two classes; one composed of those who carry on the shop as "principal" and one composed of those who carry it on as "agent of any corporation or person or persons." There is also a third class drawn within the scope of the act, namely, a class composed of those who accept employment, and, as employees, assist in the carrying on of the shop. Under the proof in this case, the defendant, if he was in actual charge of the business, belongs to the second class, as agent of the Merchants' Stock and Grain Company. If he was simply assisting

he belongs to the third class. The statute was framed for the purpose, doubtless, of reaching not only men who run bucket shops of which they are proprietors and principals, but those also who are operating for outside concerns, or for those who do not, for any reason, appear as proprietors and principals. However this may be, it is obvious that a charge that a man is carrying on a business for himself as principal is not sustained by proving that he was merely acting as agent for, or was an employee of, a proprietor corporation in whose name the business was done.

II.   We think that the indictment should have charged either the names of the customers with whom pretended trades were made, or that their names were to the grand jurors unknown. The State must prove *pretended* sales or purchasers.

We are cited to misdemeanor cases in this State, involving the running of bawdy houses, and selling liquor, where it was held unnecessary to give the names of the customers. In such cases there is no question of the character of the acts permitted or committed. Here it is a vital question whether the act committed was a real or pretended sale. The defendant is charged with making pretended sales. Ought not the defendant to be advised of the particular transactions, so that he may prepare upon the question of *bona fides?*

In the Kentner Case (State v. Kentner, 178 Mo. 487), cited by the State, the information charged the names of the customers. So in State v. McKee, 212 Mo. 141, an information charging a felony in the setting up of a gambling device gave the names of certain players, and others "unknown." The indictment in State v. Rosenblatt, 185 Mo. 120 (a gambling device case), states that the defendant did "entice and permit divers persons to said grand jury unknown." These gambling device cases are based upon a statute that

requires something more than merely setting up and keeping the device to complete the offense. The defendant must also "induce, entice or permit" a person to use the same. [R. S. 1899, sec. 2194.] So, in the case at bar, the mere setting up a room with the appropriate paraphernalia is not the offense. The person setting up must carry it on by making pretended trades. How is he to know what particular sale he is to answer for unless the indictment in some way identifies it? Must he be prepared to prove the legality of any and every one of the numerous transactions made in the place?

In State v. Burke, 151 Mo. 1. c. 144, Judge SHERWOOD, speaking of an indictment for recording bets and wagers by mechanical means, says: "It should have described what were the mechanical and other means employed . . . and stated with whom the bets, etc., were made."

In State v. Martin, 108 Mo. 117, the distinction is pointed out between a case charging one with selling liquor without a license, in which case it is not necessary to state the name of the customer, and a case where the charging is selling liquor by a druggist, without a proper prescription, in which latter case the name of the purchaser must be set out in the information. That case is authority for the proposition that where the character of the act is under consideration, i. e., whether the sale or purchase is pretended or actual, the name of the person with whom the trade was made must, if known, be set out, or must be stated to be unknown.

The motion in arrest should have been sustained.

III. The statute, in substance and effect, prohibits a place in which the person carrying it on makes pretended sales or purchases, without regard to whether such sales or purchases are innocent or of a gambling nature. It is claimed that the statute is bad be-

cause it does not define the pretended sale or purchase; that the Legislature cannot forbid innocent transactions of this kind, free from any taint of gambling. We are not prepared to accede to this proposition. This statute is doubtless aimed at gambling in futures. We cannot say that the Legislature has not power to forbid the carrying on of a place wherein the person carrying it on makes pretended sales or purchases, whether innocent or not, of the commodities mentioned, if in the judgment of the Legislature the inhibition of innocent pretended sales or purchases in such place is necessary to prevent gambling therein in such commodities. We think the Legislature might safely assume that this law would not deprive any great number of persons of the privilege of resorting to a bucket shop for the purpose of making innocent pretended sales or purchases, free from any element of gambling. We have recently decided in the case of State v. Smith, 233 Mo. 242, that the Legislature has power to forbid the exercise of a right otherwise lawful when it deems such inhibition necessary to protect the public health. The cases cited in that case (Booth v. Illinois, 184 U. S. 425; Ex Parte Lucas, 160 Mo. 218; State v. Addington, 77 Mo. 110) are in point here.

The offense consists in carrying on a bucket shop or place wherein pretended sales and purchases are made by the person in charge. It is the carrying on of the business of making pretended trades that is penalized—not the acts or transactions themselves. If, then, the statute applies to all pretended sales or purchases made in the place, the indictment sufficiently individuates the offense when it follows the language of the statute. A pretended sale needs no definition in statute which covers all pretended sales.

IV. The Act of 1907 is in harmony with sections 28 and 34 of article 4 of the State Constitution.

We are concerned here with so much of the act only as relates to bucket shops. The caption of the act is "Crimes and Punishments, Bucket Shops." Then follows the title proper: "An Act to repeal sections 2221, 2222, 2223, 2224, 2225 and 2226 of Chapter 15, Article 8, of the Revised Statutes of 1899, and to enact new sections in lieu thereof." Chapter 15 of the Revised Statutes of 1899 is headed "Crimes and Punishments." Article 8 is headed "Offenses against Public Morals and Decency, or the Public Police and Miscellaneous Offenses." The repealed sections 2221 and following, relate to bucket shops. While the title to the Act of 1907 did not, in terms, express the subject of the Act, it is apparent from the title that the sections repealed related to bucket shops. Under the title "Crimes and Punishments, Bucket Shops," no legislator would be misled to suppose that the act proposed to repeal any laws other than those relating to bucket shops. The title made it obvious that the act related to bucket shops, and one need but to refer to the sections mentioned in the title to ascertain the subjects therein treated. The title, taken as a whole, clearly showed that the subject of the bill was bucket shops, and that the sections to be repealed related to bucket shops. In thus ruling we are in line with the case of State v. Doerring, 194 Mo. 398.

We deem it unnecessary to discuss the other questions elaborately argued for defendant.

The judgment is reversed and the cause remanded for such further orders and proceedings as shall be in harmony with the views expressed herein.

*Kennish, P. J.,* and *Brown, J.,* concur.