[S. F. No. 958.  Department One.—June 30, 1898.]

DANIEL H. PERKINS, Appellant, v. CHARLES H. FISH et al., Respondents.

|121  317|
|a129  206|

Trial—Similar Causes of Action—Sufficiency of Proof—Agreed Test— Dismissal.—Where the plaintiff had numerous causes of action to be tried, depending upon the same general state of facts, and, after evidence had been introduced in support of several of them, it was agreed by counsel that a test might be made of the sufficiency of the proofs in support of the causes of action tried, the defendants objecting to any further evidence in order to get the matter fully before the court, whereupon the court, after argument, held the evidence insufficient and sustained the objection to further evidence and dismissed the case, it must be held that counsel and the court proceeded on the understanding that the court might, upon the evidence as it then stood, determine the merits of the plaintiff's case, and the plaintiff is concluded by his consent from objecting that the court erred in arbitrarily stopping further evidence in support of plaintiff's allegations and ordering a judgment of dismissal.

Life Insurance Association—Assessment Plan—Validity of Incorporation—Capital Stock—Guaranty Fund. — A life insurance association formed under sections 451 and 593, et seq., of the Civil Code, as an association without profit of persons as members thereof, for the purpose of equalizing the risk of death and to pay to the nominees

of such members as may die stipulated sums of money, to be collected from surviving members on the assessment or co-operative plan, has declared objects which are lawful and commendable; and its articles of incorporation being in due form for such a corporation, need not set forth any capital stock nor guarantee fund such as is required of life insurance corporations organized under section 437 et seq. of the Civil Code.

ID.—ASSUMED INVALIDITY—CERTIFICATES OF MEMBERSHIP—BY-LAWS—RECOVERY OF ASSESSMENTS PAID—MANAGERS NOT LIABLE.—Assuming that the corporation was not legally formed, and was not even a corporation *de facto*, members, whose certificates of membership contained a copy of the by-laws, which were made part of the contract of membership, and who had paid assessments in accordance therewith, which were paid out by the managers pursuant to the by-laws for death losses and expenses, and who had the same means of knowledge and notice as to the invalidity of the corporation as that possessed by the managers, cannot after failure of the company in its business, hold the managers liable in an action to recover back the assessments paid, on the ground that the managers had represented that the corporation was organized under the laws of the state of California, no fraud or absence of good faith on their part having been shown in any respect.

ID.—ACQUIESCENCE OF PLAINTIFF.—Plaintiff, by continuing to be a member, paying assessments and receiving statements, until the company failed, and having knowledge and means of knowledge of all the facts, must be held to have acquiesced in the acts and representations of the managers of which he complains.

ID.—LIABILITY OF MEMBERS OF INVALID CORPORATION—GOOD FAITH.—Where persons knowingly and fraudulently assume or pretend to have a corporate existence, they may be held liable as individuals; but where they are acting in good faith, supposing that they are stockholders or members in a valid corporation, and where the corporation assumes to transact business for a number of years, and the assumed corporate existence is not challenged by the state, they cannot be held liable as individuals. The principle that shields the members from claims of persons dealing with the corporation under such circumstances is equally efficacious to protect the members as between themselves.

ID.—MEMBERS IN PARI DELICTO.—Where no fraud is shown to have been committed by the managing members, either in the organization of the corporation or in the conduct of its business, all the members of the assumed corporation were parties to the representation that its organization was valid, and stood in equal relations to all the facts connected therewith; and, in so far as any wrong was done thereby, the members were in *pari delicto*, and neither of them should be permitted to take advantage of his own wrong as against any other.

Appeal from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

T. C. Spelling, and Reddy, Campbell & Metson, for Appellant.

Chickering, Thomas & Gregory, and Edward R. Taylor, for Respondents.

CHIPMAN, C.—This action is brought to recover the sum of eighty-three thousand seven hundred and four dollars and fifteen cents, alleged to have been paid by plaintiff and his assignors to defendants while acting as the agents and managers of the so-called Home Benefit Life Association. Defendants had judgment, from which this appeal is prosecuted on bill of exceptions.

The cause was tried by the court without a jury. Plaintiff introduced a large amount of testimony, oral and documentary, covering over four hundred and fifty folios of the printed transcript. The bill of exceptions then contains a statement as follows:

"At this point it was suggested to the court by counsel for the defendants that as there were more than one hundred causes of action, each one of which would require evidence on the part of plaintiff to sustain it, that it might be well to determine at this stage whether or not it was advisable to further proceed in the trial until ascertaining whether plaintiff had made such proof on the causes of action already tried as would warrant the consumption of time necessary to hearing all the causes of action. Thereupon, plaintiff's counsel assenting thereto, argument was had by counsel on both sides of the case as presented, the counsel for defendants, in order to get the matter properly before the court, then and there objecting to the introduction of any further evidence; and on the thirty-first day of August, 1896, the court filed and caused to be filed in said action and entered in the minutes of said court an order in words and figures following, to wit: The objection of defendants to the introduction of any further evidence is sustained, and the action is ordered dismissed, To which order and ruling of the court plaintiff by his attorney then and there objected and duly excepted."

1. It is now claimed as error that the court stopped the in-

troduction of any further. evidence by plaintiff and ordered a: judgment of dismissal. The record discloses no formal motion for nonsuit by defendants, nor does it show that plaintiff had other testimony to offer, or desired to offer other testimony,. .either before argument upon defendants' suggestion, or after the ruling of the court; nor did plaintiff assign any reasons for objecting to the order. The situation is anomalous, and yet we do not think the court erred in acting on the suggestion as though plaintiff had closed his testimony and was willing: to have the court pass upon its sufficiency to support the com-- plaint. Whether the court rightly decided the merits of the case as presented is another question presently to be noticed. We concur with plaintiff that where there is a good cause of ac- tion stated, as the. court here must have held there was in over- ruling the demurrers, the plaintiff cannot be arbitrarily stopped against his consent in the midst of the introduction of admissi- ble evidence in support of his allegations. No appellate court ever laid down a rule that would thus leave litigants at the· mercy of trial courts. Nor do we think the trial court in this case did any such thing. It is manifest from the record, we· think, that counsel and court all proceeded upon the under- standing that the court might, upon the evidence as it then stood, determine the merits of plaintiff's case. Plaintiff's con- sent must be held to conclude him; and to hold otherwise would be to hold that plaintiff intentionally led the court into the commission of the error of which he now seeks to take advantage. We are unwilling to impute to counsel for plaintiff any such motive. The cases cited in relation to nonsuiting a plaintiff before concluding his evidence, or upon an opening statement, are not in point.

2. The theory upon which the complaint proceeds is that this association was never legally incorporated, for the reason that there was no statute law authorizing its organization as a cor- porate body. It is claimed that the association never became even a *de facto* corporation, because it failed to do the acts re- quired by section 437, et seq., of the Civil Code; and that defend- ants in assuming to form a so-called corporation, as they under- took to form it, acted wholly outside any statutory permission or authority, and their efforts were utterly abortive and void,

It is claimed that plaintiff (and plaintiff's assignors) paid to defendants at sundry times certain sums of money, induced thereto by the false and fraudulent representations of defendants, and under the belief, willfully and falsely engendered and created by defendants, that the association was a legal corporation organized under the laws of the state. It is hence contended that defendants became and are individually liable for the money thus received by them. Defendants claim to have organized the corporation under the provisions of section 593 of the Civil Code and the sections immediately following; that section 451 of the same code was in force at the date of the organization by which the corporation thus formed was declared not to be an insurance company in the sense and meaning of the insurance laws of this state as set forth in section 437, *supra*, et seq., and was exempt from the provisions of all existing insurance laws of the state; and that if any doubt existed theretofore it was entirely removed by the act of March 19, 1891 (Stats. 1891, p. 126), and particularly section 3 of that act, which it is claimed, validated the said corporation and recognized its existence as a legal corporate body.

The questions involved in these conflicting contentions are numerous and lead into a very wide field of corporation law, where the decisions are not by any means harmonious. From the view we have taken of the case we do not find it necessary to follow counsel in their somewhat extended excursion.

The evidence shows that defendants formed a corporation whose declared purposes and objects were both lawful and commendable, and it is not questioned that the articles of incorporation were in due form in all respects. The articles declared: "That the purposes for which it is formed are to associate together persons for the purpose of equalizing the risk of death, and to pay to the nominees of such members as may die stipulated sums of money, to be collected from surviving members upon the assessment or co-operative plan; to do any and everything requisite, necessary or convenient for accomplishing the said purpose."

Immediately upon filing certified copy of the articles with the secretary of state, officers were elected, by-laws adopted and circulars containing the same and a full statement of the plan

upon which the business of insuring the lives of members was to be conducted was embodied in printed circulars and other forms of advertising literature, giving the names of the officers and directors, and were given broadcast to the public and intending members. It was clearly stated in the articles and appeared in many of these documents what were the purposes and objects; that the company had no capital stock and was not organized for profit; that the cost of the insurance was to be met by assessments, and these would depend upon the number of deaths and the age of the insured; that the directors were to be chosen by the members and had the management of the affairs of the corporation. The members were kept informed from time to time by printed annual statements of the business affairs of the company, and they had access to its books at all times. A similar organization was formed in 1880, of which the present corporation was spoken of as a reincorporation. The tenth annual statement for 1890 showed as follows:

Total income ......................... $804,747.07
Death losses paid ............................. $575,000.00
Expenses, including salaries, commissions, advertising and all other items ..................... 178,021.14
Reserved fund in bank........................ 41,713.01
Cash in bank............................ ............... 10,012.92

                                                      $804,747.07

This income was paid to the corporation by members by way of assessments to meet losses accruing by the death of members and for expenses. It was paid out by the corporation for these purposes in accordance with its plan and pursuant to the direction of its governing board of directors who were chosen by the members; the directors were themselves members and paid their assessments as did others; they received no compensation except a small sum for *per diem* attendance at each regular meeting, and pay for actual services rendered in any other special capacity; they derived no benefit, with this exception, different from any other member; the money was all paid to the treasurer and deposited in bank, and paid out only upon proper vouchers; the directors personally handled no money of the corporation. The certificate of membership issued to each

member was signed and assented to by him, and it made the
by-laws a part of the contract of membership and they were
printed on the back thereof. Plaintiff testified that a policy was
issued to him in 1880, and he paid assessments until 1894, hav-
ing twice renewed his membership after reincorporation in
1885. It appears that the association continued business up
to 1893, when it found itself unable to go on owing to the fall-
ing off of membership and lack of funds, and passed into the
hands of a receiver.

Conceding that there was neither a *de jure* nor a *de facto* cor-
poration behind these defendants, which is the most favorable
view for plaintiff, we cannot see upon what principle plaintiff
should be permitted, in the absence of fraud on the part of de-
fendants, to recover back money voluntarily paid by him to an
association of which he was a co-equal member. The allegation
of the complaint is that he paid the money to defendants, but
the evidence is that the contract of membership was with the
association as such, and that the defendants personally neither
received nor handled any of the money, and that it was paid
to the association and disbursed by the association as such. It
was paid in and paid out under articles of association and rules
and regulations framed by plaintiff and other members or as-
sented to by them in advance of any payment by them; and
they must be held to be bound by their own acts. Whether
the association be regarded as a partnership, a joint stock com-
pany or a voluntary association, its promise to insure the lives
of its members imported a good consideration; and the defend-
ants, as the chosen agents of the members, in causing the as-
sociation to enter into such contracts, cannot be held liable for
duties honestly and faithfully performed.

Plaintiff cannot now be heard to say that his money was im-
providently invested or illegally paid out. It would, we think,
be a perversion of law to hold that after doing business for sev-
eral years in the way this was done, and after having paid out
large sums of money for death losses and necessary expenses, the
members who had the good fortune to survive the enterprise
could, upon the insolvency of their association, or its inability
to continue business, compel their directors and immediate
agents to pay back to them out of their own pockets what the

members had themselves caused to be disbursed for losses and expenses. We think this is so obviously the just view of the matter as to make the citation of authorities superfluous.

The only ground upon which, in our judgment, plaintiff could recover is the alleged ground of fraud. The gravamen of the charge is that defendants falsely represented that the Home Benefit Life Association was a legally organized corporation and was authorized to do business as such. The particulars in which it is alleged that the representations were false consisted in the failure of the association to have any capital stock or guarantee fund, and its failure in other respects to comply with the provisions of the Civil Code, section 437, et seq.

It is only by inference that defendants are charged with representing that this was such a corporation as is contemplated by these sections. The evidence is that they never represented that the corporation had any capital stock or reserved fund; on the contrary, all the representations were that there was no capital stock and that the organization was not formed for profit. The scheme set forth in the published circulars and in the articles contemplated such a corporation as is provided for in the sections under which defendants claimed to be operating. A comparison of these sections of the code with 437 et seq. will disclose an essential difference in the two plans of insurance. Sections 437 et seq. contemplates a "mutual insurance" corporation with a paid-up capital of not less than one hundred thousand dollars; with a guarantee fund of not less than two hundred and fifty thousand dollars.

In the other case where the purpose is "mutual insurance on the assessment plan," and the corporation is formed not for profit, no capital or capital stock was required, and no guarantee fund, except by the act of 1891 a deposit of five thousand dollars was required to be paid in by not less than two hundred members.' However, the evidence shows that the directors organized the corporation and conducted its affairs in the honest belief that the association was legally formed. Whatever was done, and the manner in which it was done, was made known to the members, and they were in possession of all the facts as completely as were the directors. There is no evidence of any misrepresentation of facts such as could have misled persons to

become members. The directors did represent that the association was a corporation organized under the laws of California, and they so believed. If the association was not a corporation, it was a mistake of law upon the part of all the members for which the courts afford no relief to them. If in fact it was a mistake of law (which we do not think necessary to decide), it was shared in by the defendants at the beginning; and also by the secretary of state and by all the members, for the consequences of which defendants are not liable. We do not attach any importance to the evidence of plaintiff as to what he thought was the character of the corporation or what he supposed the directors were doing. They are not more responsible for his misconceptions of law than they were for their own honest beliefs. Nor do we attach importance to the evidence of plaintiff and his assignors that if they had not believed the corporation to be legal and that it had a guarantee fund and had capital stock, and that if they had not had faith in the directors as men of wealth and honor and high standing, they would not have become members. They knew all about the corporation, or had that means of knowledge which is the equivalent of knowledge. They dealt with the association as a corporation, and were bound to take notice of the articles as well as the statutes of the state. (Morawetz on Corporations, sec. 591.) The certificates of membership showed on their face the very contrary to what some of the witnesses testified they understood to be the fact. There is absolutely no evidence from which the court could find fraud either in the organization of the corporation or in the conduct of its affairs. With all this knowledge and means of knowledge plaintiff continued to be a member, paying assessments and receiving statements until the company failed, and must be held to have acquiesced in the acts of which he now complains. (Morawetz on Corporations, sec. 630, et seq.) Mr. Justice Brewer in *Garlside Coal Co. v. Maxwell*, 22 Fed. Rep. 197, said: "Where persons knowingly and fraudulently assume a corporate existence, or pretend to have a corporate existence, they can be held liable as individuals; but where they are acting in good faith, and suppose that they are stockholders in a valid corporation, and where the corporation assumes to transact

business for a number of years, and the assumed corporate existence is not challenged by the state, then they cannot be held liable as individuals." (Morawetz on Corporations, sec. 748.) The principle that shields the members from the claims of persons dealing with the corporation under such circumstances is equally efficacious to protect the members as between themselves. There being no fraud shown to have been committed by defendants, the members were all parties to whatever was done and stood in equal relations to all the facts. Neither should now be permitted to take advantage of his own wrong; and so far as any wrong was done the members were *in pari delicto*.

The essential inequity of this action lies in the undisputed fact that plaintiff and his assignors knowingly and advisedly contributed from time to time for several years to the payment of large sums for mutual insurance through agents of their own selection; they stood by all this time and saw this money paid out for death losses and expenses, and at no time called in question the legality of the proceedings under which this was done; and now that the association can no longer continue business they seek to establish a rule by which to compel ten of their number to restore to the other four or five hundred the money they paid in, and which has been paid out upon contracts and under regulations to which they were themselves willing parties. There is, in our opinion, no principle of law or equity warranting any such claim.

The errors alleged to have occurred during the course of the trial do not seem to call for special comment.

The judgment and order should be affirmed.

Belcher, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Fleet, J.

Hearing in Bank denied.