No. 04-618

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 72

VALLEY VICTORY CHURCH,

      Plaintiff and Appellant,

   v.

GREGORY SANDON, d/b/a SANDON GRAVEL & EXCAVATING,
INC., SANDON GRAVEL AND EXCAVATING COMPANY,
SANDON CONSTRUCTION COMPANY, INC., RUSSEL OLSEN
d/b/a RUSSEL OLSEN TRUCKING, JEREMY JUNTUNEN d/b/a
BARE NAKED PAVING COMPANY, and DOES 1-5,

      Defendants and Respondents,

   and

DARVIN STRUCK and BONNIE STRUCK,

      Third-Party Respondents.

APPEAL FROM:    The District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV 2003-640,
                Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          William L. Managhan, Managhan Law Firm PLLC, Kalispell, Montana

      For Respondents:

          Joshua A. Racki (Sandon) and Paul A. Sandry (Olsen), Johnson,
          Berg, McEvoy & Bostock, Kalispell, Montana

          John R. Quatman, Quatman & Quatman, PC, Whitefish, Montana (Juntunen)

          Michael H. Keedy, Henning & Keedy, P.L.L.C., Kalispell, Montana (Struck)

                          Submitted on Briefs: February 2, 2005
                                   Decided: March 22, 2005

Filed:

                              _____
                                     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Valley Victory Church appeals from the grant of summary judgment to Respondents. We reverse and remand in regards to Respondents Sandon and Olsen, and Third-Party Respondents Strucks, and dismiss the action against Jeremy Juntunen.

¶2     We restate the issues on appeal as:

¶3     1. Whether, in light of the subsequent 2004 reinstatement of the Church's corporate status, the Church is deemed to have been a corporation as of the date of the Strucks' gift in 2002.

¶4     2. Whether the Strucks can question whether they had the requisite donative intent at the time they made their gift to the Church.

¶5     3. Whether Juntunen should be dismissed because he received permission to dump on the property and removed the asphalt he had dumped after the Church told him to do so.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     Most of the facts involved in this action are not in dispute. Valley Victory Church (the Church) of Kalispell incorporated as a religious corporation on January 22, 1998. The Church hired an attorney to attend to its responsibilities as a corporation, including filing required annual reports with the Secretary of State. Sometime after the attorney properly filed an annual report on February 4, 1999, the attorney left Montana. The attorney did not inform the Church that it needed to continue filing annual reports in order to retain its status as a corporation. Because of a failure to file the next annual report, the Secretary of State suspended the Church's corporate status and involuntarily dissolved the corporation on

2

December 1, 2000. The Secretary of State sent notice of the suspension, but it sent the notice to the Church's former attorney's now vacant office. Therefore, the Church did not receive word of the suspension. It is undisputed that the Church continued operating as though it were a religious corporation, and that it did so in good faith.

¶7 Subsequent to the involuntary dissolution, Darvin and Bonnie Struck gave a plot of land outside of Kalispell to the Church. The Strucks transferred the land by quitclaim deed on August 5, 2002. The Strucks gave the land partly because they wished to help the Church, but also partly because they wanted to take advantage of the tax deduction attendant to such a large gift. At his deposition, Darvin Struck insisted that he asked the Church officials if they were a corporation and they told him "yes." As of the time of the summary judgment hearing in the District Court, the Strucks had not taken the tax deduction nor had they ever asked the Church for paperwork necessary in taking the tax deduction.

¶8 The Church anticipated erecting a new church building on the property. Before it could do so, however, it needed to raise the level of the land. Therefore, around the time the Strucks made their gift, a sign was placed on the land asking for anyone who wanted to help out to dump fill dirt on the property. Many different parties took advantage of this opportunity. Unfortunately, much of the fill contained asphalt and garbage. The Department of Environmental Quality told the Church that the asphalt and garbage must be removed from the fill. The substantive claims of this suit, not at issue in this appeal, concern damages the Church incurred in cleaning the fill.

3

¶9     One party to this appeal, Respondent Jeremy Juntunen, received permission from Darvin Struck to dump fill, including asphalt, on the land. He did this until a representative from the Church told him to cease. Thereafter Juntunen removed fifteen loads of asphalt from the land.

¶10    The Church filed this action against Respondents on December 5, 2003. Respondent Olsen then filed a third-party complaint against the Strucks. At some point after the litigation commenced it became known, for the first time to any of the parties, that the Church's corporate status had been dissolved some three years earlier. Accordingly, on February 26, 2004, the Strucks, now parties to the suit, filed a "Revocation and Notice of Invalidity of Deeds" in the county office, "revoking" their gift of land to the Church. Soon thereafter, the Church filed for reinstatement of corporate status with the Secretary of State. The reinstatement was made official on March 18, 2004.

¶11    Respondents moved for summary judgment, and the District Court granted the motion. It reasoned that the Church could not have accepted the gift from the Strucks because at the time it was not a corporation; and since the Church did not acquire ownership of the land, it lacked standing to bring the suit. The court summarily disposed of the Church's arguments that while it was involuntarily dissolved it was a *de facto* corporation and that the reinstatement of its corporate status by the Secretary of State retroactively validated its acceptance of the Strucks' gift.

**STANDARD OF REVIEW**

¶12    We review a district court's grant of summary judgment *de novo*. *Olympic Coast Inv., Inc. v. Wright*, 2005 MT 4, ¶ 19, 325 Mont. 307, ¶ 19, 105 P.3d 743, ¶ 19. The moving party has the initial burden of showing that no genuine issues of material fact exist. Once the moving party meets that burden, in order to raise a genuine issue of material fact the non-moving party must provide substantial credible evidence that one exists. *Von Petersdorff v. Kenyon Noble Lumber Co.*, 2004 MT 382, ¶ 8, 325 Mont. 94, ¶ 8, 103 P.3d 1082, ¶ 8. Once the district court establishes that no genuine issues of material fact exist the court must determine whether the moving party is entitled to judgment as a mater of law. We review that determination for whether the district court was correct. *Von Petersdorff*, ¶ 8.

**DISCUSSION**

**ISSUE ONE**

¶13    *Whether, in light of the subsequent 2004 reinstatement of the Church's corporate status, the Church is deemed to have been a corporation as of the date of the Strucks' gift in 2002.*

¶14    A gift *inter vivos* requires (1) donative intent, (2) delivery, and (3) acceptance. *Albinger v. Harris*, 2002 MT 118, ¶ 31, 310 Mont. 27, ¶ 31, 48 P.3d 711, ¶ 31. Respondents and Third-Party Respondents contend that (1) and (3) were not met in this case. This section addresses element (3). Issue Two will address element (1).

¶15    The various Respondents argue that since the Church was not a legal corporation at the time of the gift, it could not have then accepted the gift. The Church counters that

5

although the Secretary of State had dissolved its corporate status at the time of the Strucks' gift, the Church was able to accept the gift because it was a *de facto* corporation. In conjunction with this argument, the Church contends that once the Secretary of State reinstated its corporate status it must be viewed as though it were a legal corporation during the period of dissolution. The Church invokes § 35-6-202, MCA, which states: "Any restoration of corporate rights pursuant to this chapter relates back to the date the corporation was involuntarily dissolved, and the corporation shall be considered to have been an existing legal entity from the date of its original incorporation."

¶16    Whether or not the Church was a *de facto* corporation at the time of the gift is not relevant to our inquiry. Indeed, there is a question as to whether the common law *de facto* corporation doctrine, long recognized by this Court, *see, e.g.*, *Sun River Stock & Land Co. v. Montana Trust & Sav. Bank* (1928), 81 Mont. 222, 235-36, 262 P. 1039, 1044, continues to exist in this State in light of the legislature's adoption of aspects of the Model Business Corporation Act. *See* § 35-1-119, MCA, Official Comments ("This section of the law is intended to clarify that the doctrine of de facto corporations has been abolished."); *see also DBA/Delaware Sys. Corp. v. Greenfield* (R.I. 1994), 636 A.2d 1318, 1319 ("The defendants . . . sought to raise the defense of a de facto corporation. Such a defense is precluded by this statute, which was taken from the 1969 Model Business Corporation Act."). *But see Montana Ass'n of Underwriters v. State ex rel. Dep't of Admin.* (1977), 172 Mont. 211, 217, 563 P.2d 577, 581 (applying the doctrine without analyzing the impact of recent legislation). The *de facto* corporation doctrine arose out of concerns that an involuntarily dissolved

corporation acting in good faith should not lose its ability to act as a corporation merely because of a technicality. *See Sun River Stock & Land*, 81 Mont. at 236, 262 P. at 1044.

¶17 In the case *sub judice*, however, whatever concerns the Church has in its ability to receive the Strucks' gift may be addressed simply through an application of § 35-6-202, MCA. The Strucks gave the property to the Church in August 2002. On March 18, 2004, the Church's corporate status was reinstated. Under § 35-6-202, MCA, we must now treat the Church as though it were a legal corporation able to accept donated property in August 2002.

¶18 Respondents argue that this reading of § 35-6-202, MCA, does not give effect to § 35-2-725, MCA, which states: "A dissolved corporation continues its corporate existence but may not carry on any activities except those appropriate to wind up and liquidate its affairs . . . ." The statute then enumerates what these "activities" include, but does not list "receive gifted property," or the like. If, pursuant to reinstatement under § 35-6-202, MCA, the corporation is deemed to have ratified acts taken in violation of § 35-2-725, MCA, then, Respondents contend, it renders § 35-2-725, MCA, meaningless.

¶19 We reject Respondents' contentions. If § 35-6-202, MCA, is read as not allowing the corporation to ratify past corporate acts (such as the acceptance of gifted property, or the making of a contract), *it* becomes meaningless. Instead, § 35-2-725, MCA, governs the acts of corporations that are in liquidation while §§ 35-6-201 and 202, MCA, give corporations the option of applying for reinstatement, especially in instances such as this one where they were involuntarily dissolved for failure to file an annual report.

7

¶20 Therefore, in light of its reinstatement, the Church, as a legal corporation, was able to accept the Strucks' August 5, 2002, gift.

## ISSUE TWO

¶21 *Whether the Strucks can question whether they had the requisite donative intent at the time they made their gift to the Church.*

¶22 The Strucks insist they only gave the property to the Church with the false understanding that the Church was a legal corporation. When they discovered that the Church was in fact not a legal corporation, they argue that they revoked their donative intent by filing their "Revocation and Notice of Invalidity of Deeds." Because this revocation was before the Secretary of State reinstated the Church's corporate status, the Strucks contend the reinstatement does not retroactively create donative "intent"which had already been revoked. The Strucks argue that this revocation does not violate the rule that *inter vivos* gifts are not revocable, § 70-3-103, MCA, because, before the reinstatement of corporate status, their donative intent could not have existed in the first place. Their donative intent could only exist potentially, and with the "Revocation and Notice" this potentiality ceased to be before it became actual.

¶23 Contrarily, in addition to the reasons enunciated in Issue One, the Church insists that there was donative intent because the Strucks did not so much intend to make their gift to the Church as a corporation, but "to the people of the Church." Even if the Strucks had known that the Church was not then a corporation, the Church argues the Strucks still would have made their gift.

8

¶24   This disagreement over the reasons behind the Strucks' gift at first seems to raise a genuine issue of material fact.  However, for the reasons outlined below, the issue is not material.  If the Church is correct that the Strucks would have gifted their land whether or not the Church was a corporation, then we would conclude, despite the involuntary dissolution, that there was a valid gift to the unincorporated association.  If we assume, as Strucks contend, that their intent was conditioned upon the Church's being incorporated, we apply the doctrine of corporation by estoppel and reach the same conclusion.

¶25   Thankfully, we can dispose of this issue without a deep analysis into the metaphysical status of the "potentiality" and "actuality" of the Strucks' donative intent.  As with constitutional matters, we will seek to resolve an issue so as not to decide a metaphysical question.  *See In re S.H. & B.H.*, 2003 MT 366, ¶ 18, 319 Mont. 90, ¶ 18, 86 P.3d 1027, ¶ 18 (citing *Merlin Myers Revocable Trust v. Yellowstone County*, 2002 MT 201, ¶ 24, 311 Mont. 194, ¶ 24, 53 P.3d 1268, ¶ 24); *see also United States v. Standard Drywall Corp.* (E.D.N.Y. 1985), 617 F.Supp. 1283, 1293 (recognizing the prudence of avoiding a metaphysical question).

¶26   As stated above, the issue of the Strucks' donative intent may be resolved through an application of the corporation by estoppel doctrine.  The doctrine prevents a party from denying a party-corporation's status.  *See, e.g.*, *Cranson v. Int'l Business Machs. Corp.* (Md. 1964), 200 A.2d 33, 39 ("[W]here one has recognized the corporate existence of an association, he is estopped to assert the contrary with respect to a claim arising out of such dealings."); *Timberline Equip. Co., Inc. v. Davenport* (Or. 1973), 514 P.2d 1109, 1112.  The doctrine may apply to the corporation itself, or to the corporation's opponent.  *Compare*

9

*Ohaco Sheep Co., Inc. v. Heirs of Ohaco* (Ariz. App. 1986), 713 P.2d 343, 346 (applying doctrine to stockholders or partners of the purported corporation); *with Lettinga v. Agristor Credit Corp.* (6th Cir. 1982), 686 F.2d 442, 446 ("A person or entity who has contracted with, or otherwise dealt with a company as a corporation is estopped to deny its corporate existence."). The doctrine rests upon equitable principles, and should only be applied when equity requires it. *Childs v. Philpot* (Ark. 1972), 487 S.W.2d 637, 641.

¶27    Although courts sometimes confuse the doctrine of corporation by estoppel with the related *de facto* corporation doctrine, they are separate concepts. *See Turner v. Turner* (Md. Ct. Spec. App. 2002), 809 A.2d 18, 63 ("'Although some cases tend to assimilate the doctrines of incorporation *de facto* and by estoppel, each is a distinct theory and they are not dependent on one another in their application.'" (quoting *Cranson*, 200 A.2d at 38)). The *de facto* corporation doctrine has been abolished in Montana. Section 35-1-119, MCA. However, the same cannot be said for corporation by estoppel. The framers of the Model Business Corporation Act, and in turn the Montana Legislature, were much more open to its continued existence. *See* § 35-1-119, MCA, Official Comments ("Abolishing the de facto corporation doctrine creates a bright line between corporations and nonincorporated businesses . . . . The proposed section does not necessarily limit the doctrine of corporation by estoppel."); *see also Pharm. Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.* (D.N.J. 1999), 59 F.Supp.2d 398, 405 (stating that the abolition of the *de facto* doctrine by statute has no bearing on the status of corporation by estoppel).

¶28 This Court has recognized the validity of the doctrine in the past, *Springer v. Opsahl* (1987), 229 Mont. 10, 19, 744 P.2d 884, 890, and while we have not explicitly applied it as a rule of law, we have done so implicitly. *See Sun River Stock & Land Co.*, 81 Mont. at 240, 262 P. at 1046 (stating that a party that has dealt with a corporation cannot now deny its existence). Therefore, considering the doctrine still stands as a functioning rule of law, we will apply it to the facts of this case.

¶29 We conclude that under the corporation by estoppel doctrine neither the Respondents nor the Strucks may argue that the Church was not a corporation when the Strucks made their gift. Respondents are merely doing so in order to avoid the question of liability in tort. It would be inequitable to allow them to escape this possible liability just because the Church, acting in good faith, was involuntarily dissolved at the time the possible liability arose. As for the Strucks themselves, Darvin Struck has made clear that he wanted to give the property to the Church as distinct from the Church's pastor. That has occurred. Beyond this, the Strucks argue that, for tax reasons, they would not have given the property if they had known the Church was not a corporation. It is undisputed that at the time of the District Court proceedings the Strucks had not taken any tax deductions related to their gift. Since the Secretary of State has now retroactively reinstated the Church as a corporation, there is nothing, perhaps aside from the passage of time, preventing the Strucks from taking their deduction. The Strucks have not suffered any detriment as a result of the reinstatement of the Church's corporate status and there is nothing inequitable in estopping them from questioning the Church's corporate status.

11

¶30 Having dealt with the Church as a corporation, the Strucks and the other Respondents are estopped from denying the corporate status of the Church. Their reliance on the "Revocation and Notice of Invalidity of Deeds" is to no avail. We conclude that the Strucks had the requisite donative intent, that there was delivery of the deed and acceptance by the Church as a corporate entity and that the Church, as owner of the gifted property, had standing to sue the Respondents.

## ISSUE THREE

¶31 *Whether Juntunen should be dismissed because he received permission to dump on the property and removed the asphalt he had dumped after the Church told him to do so.*

¶32 As stated in the facts above, Juntunen received permission to dump fill, which included asphalt, on the property. When the Department of Environmental Quality told the Church it had to remove the asphalt from the land, the Church asked Juntunen to do so. He thenceforth properly removed fifteen loads of asphalt. In his motion for summary judgment Juntunen attached an affidavit indicating that he removed the asphalt, and that evidence was not rebutted. Accordingly, the District Court granted Juntunen's motion for summary judgment and dismissed the case against him. In light of Juntunen's uncontroverted evidence, we affirm the District Court's grant of Juntunen's motion for summary judgment.

## CONCLUSION

¶33 The Strucks' gift to the Church was a valid *inter vivos* gift. Title to the land properly passed to the Church at the time of the gift. As owner of the land, the Church may pursue its claims against Respondents. We affirm the District Court's dismissal of Respondent

12

Juntunen.  We reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.


/S/ W. WILLIAM LEAPHART


We Concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ JOHN WARNER
/S/ BRIAN MORRIS