DA 08-0491

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 264

PLUM CREEK MARKETING, INC., PLUM CREEK
NORTHWEST PLYWOOD INC.,

        Plaintiffs and Appellants,

   v.

AMERICAN ECONOMY INSURANCE COMPANY,
SAFECO CORPORATION, WALSTEN GARAGE
DOORS, INC., a Montana corporation, JED MOSER,
individually, and CHRISTINA MOSER, individually
and as parent and guardian of Jamie Moser and
Samantha Moser, and DOES 1-10,

        Defendants, Appellees, and Cross-Appellants.

_____

JED MOSER, individually and as an assignee of claims from
PLUM CREEK MARKETING, INC., and PLUM CREEK
NW PLYWOOD, INC.,

        Plaintiffs and Appellants,

   v.

SAFECO CORPORATION; AMERICAN ECONOMY
INSURANCE COMPANY; WALSTEN GARAGE DOORS,
INC., and DOES 1-10,

        Defendants, Appellees and Cross-Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DV 2006-954C
                  Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellants Plum Creek Marketing Inc., Plum Creek Northwest Plywood, Inc.:

            Todd A. Hammer, Angela K. Jacobs, Hammer, Hewitt, Jacobs & Floch,
            PLLC, Kalispell, Montana

For Appellant Jed Moser:

Kenneth S. Thomas, David M. Sandler, Bothe & Lauridsen, P.C.,
Columbia Falls, Montana

J. David Slovak, Tom L. Lewis, Lewis, Slovak & Kovacich, P.C.,
Great Falls, Montana

For Appellee Walsten Garage Doors, Inc.:

James D. Moore, Attorney at Law, Kalispell, Montana

Robert J. Phillips, Phillips Law Firm, P.C., Missoula, Montana

For Appellees Safeco Corporation and American Economy Insurance Company:

Mark S. Williams, Williams Law Firm, P.C., Missoula, Montana

_____

Submitted on Briefs:  July 8, 2009

Decided:  August 11, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    On September 8, 2008, the Eleventh Judicial District Court issued an order on summary judgment motions filed by Plum Creek Marketing, Inc. and Plum Creek Northwest Plywood Inc. (collectively Plum Creek), Jed Moser (Moser), American Economy Insurance Company (American), Safeco Corporation (Safeco), and Walsten Garage Doors, Inc. (Garage Doors). The District Court granted summary judgment to American and Safeco, concluding they did not have a duty to defend and indemnify Plum Creek against a negligence claim filed by Moser. The District Court also granted summary judgment to Garage Doors, concluding it could not be held liable for the negligence claims stated in Moser's complaint. Plum Creek, Moser, and Garage Doors now appeal from the District Court's order. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    On January 2, 2002, Plum Creek and Garage Doors entered into a contract for services (Contract) to govern work performed by Garage Doors at Plum Creek's facilities. A provision in the Contract required Garage Doors to indemnify Plum Creek. It read as follows:

> 6.    **Indemnity.** Contractor shall indemnity and save the Company harmless from any and all personal injuries, damages, claims, suits, costs and recoveries of every name and nature which may in any manner arise or grow out of the business conducted by the Contractor on the premises of the Company, or the use or occupancy thereof by the Contractor, or by other persons at Contractor's instance or with Contractor's consent or knowledge, or the services to be provided hereunder, during the term of this Agreement, whether due to the negligence of the Company, its contractors, officers, agents and employees; and in the event any suit or action shall be brought against the Company to recover on account of such loss, damage, injury or

3

destruction hereinbefore agreed to be borne by Contractor, Contractor shall appear and defend any such suit or action and pay any judgment that may be obtained against the Company.

¶3     The next provision in the Contract required Garage Doors to obtain a policy of commercial general liability insurance.   This provision read as follows:

7.     **Insurance.**

A. Contractor shall obtain and keep in full force and effect, during the life of this Agreement (including any extension thereof), at its sole costs and expense, a policy of public liability and property damage insurance protecting the Company against loss on account of injuries to or death of persons and loss of or damage to property which may in any manner arise or grow out of the business conducted by Contractor on the premises of the Company, or the use and occupancy thereof by Contractor or by other persons at Contractor's instance or with Contractor's consent or knowledge, or the services to be provided hereunder, during the term of this Agreement, whether or not due to the negligence of the Company, its contractors, officers, agents and employees.   Coverage requirements will be as follows:

(1) A policy of Commercial General Liability Insurance to include minimum limits of $ 1,000,000 combined single limit Bodily Injury and Property Damage each occurrence.

.   .   .

(3) The polices specified above shall include an endorsement which shall name Plum Creek Timber Company, Inc, and Subsidiaries, and/or Affiliates, as additional insureds on a primary basis for the duration of the Contract term.  The additional insured endorsement must be ISO CF20 10 11 85[1] or other form with like wording.

¶4     Plum Creek claims that Garage Doors forwarded the Contract to Western States Insurance Agency, Inc. (Western States), and that Western States in turn procured a commercial general liability policy (Policy) issued by American.

---

[1]  According to Plum Creek, the CG 2010 endorsement is often requested by additional insureds because courts have interpreted it to provide coverage for claims based upon the additional insured's own negligence.

¶5 In April 2002, Moser suffered serious bodily injury while repairing a garage door at a Plum Creek mill in Columbia Falls. Moser claims that his employer at the time was Walsten Enterprises, Inc. (Enterprises), a separate business owned by Craig and Linda Walsten, who are also the principals of Garage Doors. Moser claims that he subsequently received workers' compensation benefits from Enterprises, not Garage Doors.

¶6 In April 2005, Moser filed a negligence action against Plum Creek, alleging that his injuries were caused by Plum Creek's negligence and failure to provide a safe work place as required under § 50-71-101, MCA. On October 3, 2005, Plum Creek tendered Moser's claims to American. Plum Creek claimed that it was covered under the Policy issued by American to Garage Doors, and under the Liability Plus Endorsement (Endorsement) subsequently issued under Garage Doors' Policy. The Endorsement reads in pertinent part as follows:

> **ADDITIONAL INSURED—BY WRITTEN CONTRACT, AGREEMENT OR PERMIT, OR SCHEDULE**
>
> The following paragraph is added to WHO IS AN INSURED (Section II):
>
> 5. Any person or organization shown in the Schedule or for whom you are required by written contract, agreement or permit to provide insurance is an insured, subject to the following additional provisions:
>
> .  .  .
>
> b. The person or organization added as an insured by this endorsement is an insured only to the extent you are held liable due to:
>
> .  .  .
>
> (2) Your ongoing operations for that insured, whether the work is performed by you or for you;
>
> .  .  .

[d.]     No coverage will be provided if, in the absence of this endorsement, no liability would be imposed by law on you. Coverage shall be limited to the extent of your negligence or fault according to the applicable principles of comparative fault.

¶7      Plum Creek also claimed that it and its subsidiaries had been listed as certificate holders on the certificate of liability issued in conjunction with the Policy. Plum Creek demanded that Western States, Garage Doors, and American acknowledge and honor the Policy's terms of coverage, and provide a defense to Plum Creek for Moser's claims.

¶8      On November 15, 2005, Safeco responded to Plum Creek's demand letter on behalf of American, and refused to provide a defense for Plum Creek against Moser's claims. Safeco acknowledged Plum Creek's allegations that it was covered under the Policy and Endorsement pursuant to the indemnity provision in the Contract between Plum Creek and Garage Doors. Safeco asserted that the Policy and Endorsement themselves extended coverage to Plum Creek only insofar as Garage Doors was negligent. In addition, Safeco noted that Garage Doors was covered by § 39-71-411, MCA, of the Workers' Compensation Act (Act), which states that the Act's remedies are exclusive for any employment-related claims covered by its provisions. Because pursuant to the Act, no liability could be imposed by law upon Garage Doors, Safeco asserted that, under the provisions of paragraph 5(2)(d) of the Endorsement (*see* Opinion, ¶ 6), American was not required to indemnify Plum Creek in any event.

¶9      Safeco's letter also acknowledged Plum Creek's claims that Garage Doors had sent a copy of the Contract to Western States (thereby allegedly providing notice to Safeco and American of its duty to provide coverage), but disputed whether this was

6

routine practice of Garage Doors and whether in fact such notice was actually provided. Additionally, Safeco disputed the significance of any certificate of insurance received by Plum Creek in conjunction with the Policy. Safeco claimed that on the back of the certificate faxed to Plum Creek, a disclaimer stated that the certificate itself is not an insurance contract, and does not alter or extend the coverage for the Policy listed on the certificate. Safeco asserted that since the certificate was sent to Plum Creek and it was accepted without objection, Plum Creek also accepted that the Policy did not include it as an additional insured.

¶10 On October 18, 2006, Moser and Plum Creek entered into a settlement agreement which provided that Plum Creek would pay Moser $350,000 and stipulate to a judgment in his favor in the sum of $2,050,000. In exchange, Moser agreed to release all claims against Plum Creek and to file a covenant not to execute. Plum Creek assigned Moser any claims it may have against American and Safeco, except for attorney fees and costs and first-party bad faith claims. The District Court subsequently approved the settlement.

¶11 On November 30, 2006, Plum Creek filed the instant suit against American alleging it had breached the duties of defense and indemnity owed to it under the Policy. Plum Creek also brought claims for common law bad faith and violations of the Montana Unfair Trade Practice Act against Safeco and American. Moser filed suit against these same entities on similar grounds, and also brought an alternative negligence claim against Garage Doors, asserting that if it did not procure the insurance it contractually agreed to provide, it was negligent in failing to do so. On May 22, 2007, the District Court consolidated these actions in Cause No. DV-06-954(C).

¶12 The parties moved for summary judgment concerning American and Safeco's duty to defend and indemnify Plum Creek, and whether American and Safeco breached those duties. Garage Doors moved for summary judgment regarding its liability to Plum Creek and Moser. The District Court held oral argument on the motions on October 1, 2007, and issued a written order on September 8, 2008.

¶13 The District Court noted that the Contract called for Garage Doors to indemnify Plum Creek from loss due to any personal injuries arising in any way out of the business conducted by Garage Doors on Plum Creek's premises. However, the District Court interpreted the Policy and Endorsement to read that an additional insured, such as Plum Creek, was covered by the Policy only to the extent that Garage Doors was found liable for some form of wrongdoing. We quote the District Court's reasoning and analysis on this point below:

> Subsection 2.b of the [Policy's] Section I excludes bodily injury for which the insured was obligated to pay damages by reason of the assumption of liability in a contract. However, that exclusion explicitly does not apply to liability for those damages:
>
>> (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement . . . .
>
> An "insured contract" is defined in section V.9.f. of the [Policy] as:
>
>> That part of any other contract or agreement pertaining to your business . . . under which you [*i.e.*, Garage Doors] assume the tort liability of another party to pay for "Bodily injury" or "property damage" to a third person or organization.
>> . . . .

8

In the contract with Plum Creek, [Garage Doors] agreed to shield Plum Creek from loss due to personal injuries which might in any way arise out of the business conducted by [Garage Doors] on Plum Creek's premises. The above-quoted provisions, taken on their own, would arguably have given rise to a duty to defend Plum Creek against Moser's suit for negligence. However, this ignores the policy's Liability Plus Endorsement which modifies explicitly the extent to which a party is an additional insured by written contract or agreement:

> 5. Any person or organization . . . for whom you are required by written contract, agreement or permit to provide insurance is an insured, subject to the following provisions.
>
> . . .
>
>> b. The person or organization added as an insured by this endorsement is an insured only to the extent you [Garage Doors] are held liable due to:
>>
>> . . .
>>
>>> (2) Your [Garage Doors'] ongoing operations for that insured, whether the work is performed by you or for you.
>>>
>>> . . . .

(Emphasis added.)

When read as a whole so as to give effect to all parts and avoid creating ambiguity where there is none, the plain language of the policy with its modifications indicate that Plum Creek was only insured to the extent [Garage Doors] was held liable due to [Garage Doors'] operations for Plum Creek. The policy does not indemnify Plum Creek absent liability arising from [Garage Doors'] own wrongdoing.

¶14 The District Court determined that Moser's complaint against Plum Creek did not state a claim under the Policy because the allegations of negligence and unsafe workplace were directed towards Plum Creek, not Garage Doors. Thus, American and Safeco had no duty to defend Plum Creek against those claims. The District Court also rejected the argument that Garage Doors' alleged submission of the Contract to Western States thereby imputed knowledge of that Contract to American, giving rise to a duty to defend.

9

The District Court characterized this argument as an attempt "to insert ambiguity regarding a point of the policy where it is unambiguous." Finally, because the District Court found no duty to defend on the part of American and Safeco, it rejected a correlative duty to indemnify as well.

¶15 The District Court also granted Garage Doors' motion for summary judgment regarding its liability for Moser's negligence claims, on the grounds that the Act provided the exclusive remedy for Moser's injuries and relieved Garage Doors of liability. The District Court further rejected Moser's attempt to apply the doctrine of "corporation by estoppel" to prevent Garage Doors from escaping liability. Moser claimed that Garage Doors and Enterprises were both owned by Craig and Linda Walsten, but that Craig Walsten held Garage Doors out as a separate and distinct entity in his business practices and filings with the Secretary of State's office. Because Garage Doors was separate and distinct from Moser's immediate employer (i.e., Enterprises), Moser argued, Garage Doors could not invoke the Act's exclusivity provision to avoid liability for Moser's negligence claims.

¶16 The District Court noted that the evidence in the record showed that Craig and Linda Walsten had in fact loosely referred to their business variously as Walsten Garage Doors, Walsten's Garage Doors, Walsten's Garage Doors, Inc., or Walsten's Garage Door, Inc., even though the name Walsten's Garage Doors was cancelled with the Montana Secretary of State in 1995, and the business had been officially registered as Walsten Enterprises, Inc., with the Secretary of State since 1999. However, such loose references did not establish that the principals behind Garage Doors and Enterprises were

10

posturing as separate and independent corporations under these names. Furthermore, the District Court determined that Moser failed to show that he assumed Garage Doors was a separate corporation or that he had any dealings with it as such, nor did he produce any evidence that there were actually separate corporate entities in existence. Thus, the District Court concluded that the facts of this case did not fall within the ambit of the "corporation by estoppel" doctrine.

¶17 Finally, regarding Moser's alternative negligence claim—wherein he argued that Garage Doors was negligent in performing its obligation under the Contract to procure insurance for Plum Creek—the District Court concluded that Moser lacked standing to bring this claim because he was not a party to the Contract itself, he was not an intended third-party beneficiary of the Contract, and the purpose of the Contract was to protect Plum Creek, not Moser, from loss.

¶18 American, Moser, Plum Creek, and Garage Doors now appeal from the District Court's order. These parties assert that the District Court erred in granting summary judgment to American and holding that American had no duty to defend or indemnify Plum Creek. American urges us to affirm.

¶19 Before proceeding to the issue before us, we note that in its order presently on appeal, the District Court gratuitously held that Plum Creek would have standing to bring a breach of contract claim against Garage Doors for its failure to obtain the appropriate insurance coverage required under the Contract's insurance provision. In response, the parties have directed some attention to this holding in their appellate briefs. As Plum Creek correctly notes, any potential claims against Garage Doors for failure to secure the

11

proper insurance are wholly separate and independent of Plum Creek's instant defense and indemnity claims against American. Accordingly, to the extent the District Court's decision purports to resolve extraneous issues of standing with respect to claims not presently before the Court, we vacate such portions of the District Court's order.

¶20 Thus, we state the issue presented on appeal as follows:

*Did the District Court err in granting summary judgment to American and holding that it did not have a duty to defend or indemnify Plum Creek under the Policy?*

## STANDARD OF REVIEW

¶21 Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Gudmundsen v. State ex. rel. Mont. State Hosp. Warm Springs*, 2009 MT 56, ¶ 12, 349 Mont. 297, 203 P.3d 813. We review appeals from a grant of summary judgment de novo. *Revelation Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 123, ¶ 13, 350 Mont. 184, 206 P.3d 919. We review a district court's conclusions of law for correctness, and its findings of fact to determine if they are clearly erroneous. *Revelation*, ¶ 13.

## DISCUSSION

¶22 Plum Creek, Moser, and Garage Doors assert that the District Court erred in granting summary judgment to American regarding its duty to defend and indemnify Plum Creek against Moser's claim. Plum Creek argues that the District Court's erroneous interpretation of the Policy hinges on its incorrect assumption that the Endorsement modified and restricted the coverage bestowed by the body of the Policy itself. Plum Creek argues that, at a minimum, the "insurance contract" provision of the

12

Policy (*see* Opinion, ¶ 13) obligated American to provide a defense for Plum Creek under the facts of this case. Plum Creek asserts that its coverage under this provision arises from American's promise to assume Plum Creek's tort liability. Plum Creek, as a party to the Contract itself, claims that it stands in the same shoes as the insured with respect to the Policy, thus giving rise to a duty to defend. In this connection, Plum Creek argues that American could not rely upon the Act's exclusivity provision in denying a defense, as it was not Moser's employer and not a participant in the quid pro quo upon which such exclusivity is based. Along the same lines Plum Creek asserts that only Enterprises, as Moser's direct employer, was entitled to assert the exclusivity defense under the Act, and that Garage Doors itself could not.

¶23 Alternatively, Plum Creek asserts that the District Court erred in concluding that it was not a "potential" additional insured under the Policy. Plum Creek asserts the duty to defend is broad and triggered when facts are presented which arguably fall within the scope of coverage. Further, Plum Creek maintains that because American was aware of Craig Walsten's testimony that he had forwarded the Contract to Western States, American has either waived or is estopped from reliance upon any exclusions in the Policy in declining to offer a defense or indemnity to Plum Creek. Plum Creek asserts that American's own training manuals and materials show that such contractually-based indemnification agreements can require it to provide indemnification and defense. Further, Plum Creek argues that internal emails from American show that its agents knew it had in fact provided lesser coverage than had been agreed to in the Contract itself. As

13

such, it argues, American has waived any exclusions which would provide for a lesser amount of coverage.

¶24 Moser's challenge centers on the proposition that Enterprises and Garage Doors are separate and distinct entities and do not share the protection of the Act's exclusive remedy provision; thus, only the negligence of Enterprises, and not that of Garage Doors, is covered under the Act's exclusivity provision. Moser also asserts that American should be estopped from denying liability on the grounds that Garage Doors and Enterprises are the "same corporation." At the very least, Moser argues that the evidence in the record reflecting that Garage Doors and Enterprises are actually separate entities created a material issue of fact that precluded summary judgment and triggered American's duty to defend. Moser also repeats many of Plum Creek's arguments, and asserts that American should have provided a defense to Plum Creek under a reservation of rights, and then pursued a declaratory judgment action if it did not believe it was required to indemnify or defend Plum Creek under the Policy.

¶25 For its part, Garage Doors argues that the District Court erred because there was a genuine issue of material fact precluding summary judgment. Garage Doors notes that Craig Walsten testified that he transmitted the Contract to Western States and believed the necessary coverage had been issued. Craig Walsten received no notice that the Policy would provide less coverage than requested. If such testimony was true, Garage Doors asserts that American and Safeco would have an "absolute duty" to defend and indemnify Plum Creek. At the same time, however, Garage Doors argues that the District Court's finding that Enterprises and Garage Doors were the same entity was factually and legally

14

correct, and that it was protected from any tort liability under the Act's exclusivity provision.

¶26 American urges us to affirm. American argues that it never provided insurance coverage to Plum Creek for liability due to its own negligence, and that Plum Creek is not insured as such under the terms of the Policy. American argues that Plum Creek is not listed as an insured on the certification of insurance, on the declarations page, or the Endorsement. Thus, it had no duty to defend or indemnify Plum Creek against Moser's claims. While American concedes that the Endorsement in the Policy provides some limited coverage for third parties who entered into contracts with Garage Doors, such coverage is limited to liability arising from the negligence of Garage Doors itself. In this case, however, Plum Creek was sued for its *own* negligence. Further, even if Garage Doors had been sued for its own negligence, American asserts that it could not be held liable under the Act's exclusivity provision. American also asserts that the District Court did not err in concluding that there were not two separate companies at the time of the accident (i.e., Garage Doors and Enterprises) as claimed by Moser, but instead only one business enterprise which employed Moser and covered him under the Act.

¶27 With respect to the significance of the insurance provision of the Contract, American asserts that such a contractual provision is insufficient to change or alter the scope of coverage actually provided by the terms of the Policy itself. American also maintains that whether or not Craig Walsten forwarded the Contract to Western States is

15

irrelevant, because American does not issue the requested "2010 endorsement"[2] and Western States would be exceeding the scope of its agency agreement with American if it issued such coverage.

¶28    The first argument we consider is whether the District Court erred in concluding that Garage Doors and Enterprises were in actuality the same company, and thereby covered under the Act's exclusivity provision. Moser argues that the District Court erred in refusing to apply the doctrine of "corporation by estoppel." Moser maintains that the evidence shows that Garage Doors and Enterprises were considered separate entities by all parties in this case. As evidence of this fact, Moser notes that Craig Walsten signed the Contract as president of Garage Doors, and held Garage Doors out as a separate entity. Furthermore, Moser claims the Policy separately insured both Enterprises and Garage Doors, and a premium was received by American to insure each of them separately.

¶29    The doctrine of corporation by estoppel prevents a party from denying the status of a corporation when to do so would result in inequity. *Valley Victory Church v. Sandon*, 2005 MT 72, ¶ 26, 326 Mont. 340, 109 P.3d 273. In *Valley Victory Church*, we reaffirmed the vitality of this doctrine in Montana. We noted, however, that this doctrine "should only be applied when equity requires it." *Valley Victory Church*, ¶ 26 (citing *Childs v. Philpot*, 487 S.W.2d 637, 641 (Ark. 1972)). In *Valley Victory Church* we did not delve into the equity requirements of this doctrine in any detail because the facts of that case did not require it. However, in *Childs*, upon which we relied in *Valley Victory*

---

[2] *See* Opinion, ¶ 3 n.1.

16

*Church*, the Arkansas Supreme Court noted that "[t]he doctrine should be applied only where there are equitable grounds for doing so, but never where it would be inequitable. It should not be applied unless it would be inequitable not to do so." *Childs*, 487 S.W.2d at 641 (citing 8 Fletcher, *Cyclopedia Corporations* 194, § 3897 (Cum. Supp. 1971); 18 C.J.S. Corporations § 111d, p. 515; *Montoya v. Hubbell*, 210 P. 227 (N.M. 1922)). The *Childs* court then went on to state:

> Before an equitable estoppel may be applied, the party asserting estoppel must have relied to his detriment or prejudice upon the representations, acts or conduct of the one against whom estoppel is invoked. *Bowlin v. Keifer*, 246 Ark. 693, 440 S.W.2d 232. In other words, the courts of Arkansas generally will not apply an equitable estoppel unless the actions or conduct relied upon caused the innocent party to assume a different position than he would otherwise have or it would be otherwise inequitable to permit the person estopped to change his position.

*Childs*, 487 S.W.2d at 641.

¶30    Even assuming that Plum Creek, Safeco, American, and Moser all thought that Enterprises and Garage Doors were separate companies and there was arguable evidence in the record to support these assumptions, Moser has not shown how he relied upon any distinction between Garage Doors and Enterprises to his detriment at the time he was employed by Garage Doors, or that he otherwise changed his position based on an assumption that these two entities were distinct. As the *Childs* court noted, "[a] 'corporation by estoppel' has no real existence but is a fiction for the purpose of a particular case and can arise only from actions and conduct of parties which place them in such a position that they will not be permitted to deny the existence of the corporation." *Childs*, 487 S.W.2d at 640-41 (citing 8 Fletcher, *Cyclopedia Corporations*

17

191, §§ 3889-389l). Here, there is no evidence indicating that Moser was even aware of any purported distinction between Enterprises and Garage Doors until after his suit was filed and he was seeking a way to avoid the ambit of the Act's exclusivity provision. Since Moser has failed to satisfy the equitable preconditions for invoking this doctrine, we agree with the District Court that corporation by estoppel does not apply in this case.

¶31　Next, we consider whether the District Court's interpretation of the Policy and Endorsement was correct and whether American had a duty to defend and indemnify Plum Creek. The interpretation of an insurance policy presents a question of law. *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 2008 MT 411, ¶ 8, 347 Mont. 267, 198 P.3d 796. An insurer's duty to defend arises when a complaint alleges facts which present a risk covered by the terms of the insurance policy. *Town of Geraldine*, ¶ 11. "The duty to defend is independent from and broader than the duty to indemnify, and arises when a complaint alleges facts, which if proven, would result in coverage. An insurer must defend unless there exists an unequivocal demonstration that the claim against the insured does not fall under the policy's coverage." *Farmers Union Mut. Ins. Co. v. Rumph*, 2007 MT 249, ¶ 14, 339 Mont. 251, 170 P.3d 934 (citing *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶¶ 20-21, 321 Mont. 99, 90 P.3d 381); *Revelation*, ¶ 32. Moreover, insurers who "look at facts beyond the allegations in the complaint do so at their own risk as they will be required to defend and/or indemnify based on the information discovered." *Revelation*, ¶ 30.

¶32　We agree with the District Court's interpretation of the Policy and Endorsement and conclude that they do not cover Plum Creek under the facts of this case. While the

18

Policy by itself would have arguably provided coverage to Plum Creek in this case, the Endorsement modified and limited such coverage. *See* Opinion, ¶ 13. Given the provisions of the Endorsement, Garage Doors could not be held liable in this case because, as noted by American, Moser's complaint alleged negligence *against Plum Creek*, not Garage Doors. Thus, it is unequivocally clear that American was not required to defend or indemnify Plum Creek. While Plum Creek and Moser cite many cases discussing the application and interpretation of insurance policies in various contexts, the scenario before this Court is straightforward and does not call for an elaborate analysis. The terms of the Policy and Endorsement taken together are clear and unambiguous, and do not provide coverage to Plum Creek in this case.

¶33   In this connection, we agree with the District Court that the question of whether Western States had received the Contract and knew Plum Creek required Garage Doors to provide a particular insurance policy as a condition of the Contract, is a wholly separate question from the fundamental meaning of the Policy and Endorsement themselves. We disagree with Plum Creek's and Moser's argument that imputation of such knowledge to American estops it from relying on the plain language of the Policy and Endorsement in determining scope of coverage. The question of whether Western States and/or American had knowledge of the Contract, and nevertheless chose to issue a policy which was not in compliance with the insurance requirements set forth in the Contract, are issues that do not bear upon the interpretation of the Policy and Endorsement actually issued by American. While such alleged omissions may bear on other claims Plum Creek might choose to bring against Western States and American,

19

they cannot alter the coverage and limits set forth in the Policy and Endorsement themselves.

## CONCLUSION

¶34   The District Court did not err in granting summary judgment to American. Garage Doors was protected from liability under § 39-71-411, MCA, of the Act. Moreover, because Garage Doors was not sued for its own negligence nor found liable for any tortious conduct, American had no duty to defend or indemnify Plum Creek under the Policy and its Endorsement. Affirmed.

/S/ PATRICIA O. COTTER

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE